1

2

3

4                          UNITED STATES DISTRICT COURT

5                               DISTRICT OF NEVADA

6   SERGIO MORALES,                          Case No. 3:16-cv-00371-MMD-WGC

7                              Plaintiff,    **REPORT & RECOMMENDATION OF**
                                             **U.S. MAGISTRATE JUDGE**
8        v.

9   WILLIAM DONNELLY, et. al.,

10                             Defendants.

11

12        This Report and Recommendation is made to the Honorable Miranda M. Du, United

13   States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

14   28  U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4, for a recommendation on

15   Plaintiff's Motion for Preliminary Injunction. (Electronic Case Filing (ECF) No. 1-3.)

16                                  **I. BACKGROUND**

17        Plaintiff, is a prisoner in custody of the Nevada Department of Corrections (NDOC),

18   proceeding pro se in this action on his Amended Complaint. (ECF No. 6.) The events giving rise

19   to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC).  The

20   court screened the Amended Complaint and allowed Plaintiff to proceed with an Eighth

21   Amendment deliberate indifference to serious medical needs claim in Count I, and parallel claim

22   under Article I, Section 6 of the Nevada Constitution, against Dr. William Donnelly, Donald

23   Poag, Dr. Robert Bannister, James Cox and Brian Egerton (mistakenly named by Plaintiff as

24   Edgerton). (ECF No. 9.) The Amended Complaint also names John/Jane Doe NDOC pharmacy

25   employees, a John Doe correctional officer, John Doe(s) grievance responder(s), and the warden

26   at LCC. (ECF No. 6 at 3.)[1]

27   _____
     [1] The Attorney General's Office has filed a limited notice of appearance on behalf of Cox and Egerton. (ECF No.
28   11.) It advised that Dr. Donnelly, Dr. Bannister, and Poag are no longer employed by NDOC and have not requested
     representation; as such, it filed their last known addresses under seal. (*Id.*) Judge Du  directed the Attorney General's
     Office to send a letter to the former employees at their last known address and asking if they want the Attorney

1    In the Amended Complaint, Plaintiff alleges that Dr. Donnelly refused to treat his

2    cholesterol issue, and that his prescription refills were repeatedly late due to the deficient policies

3    and procedures of the prison, its medical department and pharmacy. He contends that his

4    grievances on this issue were ignored or inadequately addressed. He eventually suffered a heart

5    attack, which he attributes to the untimely receipt of his prescription medications and

6    Dr. Donnelly's failure to treat his elevated cholesterol. He required surgery where two stents

7    were placed in his heart. He claims that the attending physician instructed him to follow his

8    medication orders, but he avers that his refills have continually been late or ignored.

9    When it screened the Amended Complaint, the court also directed Defendants to respond

10   to a motion for temporary restraining order (TRO) and preliminary injunction (PI) Plaintiff filed

11   along with his original complaint. (ECF No. 1-3.) The motion for TRO/PI sought an order

12   protecting him from any future delay in receipt of his medication. (*Id.*) Defendants filed a

13   response to Plaintiff's motion for TRO/PI on July 27, 2016. (ECF No. 14.) Plaintiff filed a reply

14   brief in support of his motion. (ECF No. 16.)

15   On August 11, 2016, District Judge Du granted Plaintiff's motion for a TRO, finding

16   Plaintiff had demonstrated a likelihood of success on the merits of his deliberate indifference

17   claim "based on his inability to obtain his refill medication in a timely manner;" that he is likely

18   to suffer irreparable harm in the absence of temporary relief; that the balance of equities tips in

19   his favor; and that it is in the public interest "to ensure that inmate's receive adequate health care

20   and medication in a timely manner." (ECF No. 17 at 4.) Judge Du directed Defendants to

21   promptly refill Plaintiff's medication within thirteen (13) days to prevent him from suffering a

22   lapse in his daily medication. (*Id.* at 5.) She required that Plaintiff continue to request refills in

23   his medication at least thirteen days before his medication is set to run out, and to keep

24   documentation of his requests. (*Id.*) In the event Defendants failed to provide him with his refill

25   within thirteen days of his request, he is permitted to move the court for monetary sanctions

26   against Defendants. (*Id.*) The TRO applies to the named Defendants as well as their officers,

27

28   General's Office to represent them in this matter, and to advise the court of their response. (ECF No. 9 at 8-9.) To date, the court has not been advised of their response. In any event, service will be addressed following the early mediation conference which has been scheduled for October 18, 2016. (*See* ECF No. 18.)

- 2 -

1  agents, servants, employees and attorneys. (*Id.*) The TRO was set to expire after fourteen days,

2  and Judge Du referred the matter to the undersigned to set a hearing at the earliest possible time

3  and provide a report and recommendation on whether District Judge Du should grant Plaintiff's

4  motion for a PI. (*Id.* at 6.)

5      The undersigned set the matter for a hearing on August 24, 2016, and directed

6  Defendants to file the relevant records under seal (including treatment records, progress notes,

7  physicians' orders, pharmacy records, medication logs, kites and grievances) that pertain to

8  Plaintiff's allegation that he experienced delays in receiving his medications, along with NDOC

9  policies concerning pharmacy procedures on prescription refills. (ECF No. 20.) Defendants were

10  to ensure Plaintiff be provided a reasonable opportunity to review these documents in advance of

11  the hearing. (*Id.*) Defendants were further directed to make the current medical director or

12  another person with meaningful knowledge of NDOC's pharmacy policies available, at least by

13  telephone, to provide any necessary testimony at the hearing. (*Id.*)

14      Defendants filed the relevant records under seal on August 17, 2016 (ECF No. 21), and

15  the undersigned conducted the hearing on August 24, 2016. Plaintiff appeared telephonically,

16  representing himself. Defendants were represented by Deputy Attorney General Heather Zana,

17  who appeared in person. NDOC Medical Director Dr. Romeo Aranas and NDOC Pharmacy

18  Director Linda Fox appeared telephonically. The court heard from the parties, and issues this

19  Report and Recommendation.

20                          **II. LEGAL STANDARD**

21      Rule 65 of the Federal Rules of Civil Procedure provide that a "court may issue a

22  preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).

23      The purpose of a preliminary injunction or temporary restraining order is to preserve the

24  status quo if the balance of equities so heavily favors the moving party that justice requires the

25  court to intervene to secure the positions until the merits of the action are ultimately determined.

26  *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an

27  "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S.

28  674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the

1   competing claims of injury and must consider the effect on each party of the granting or

2   withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555

3   U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires

4   that the court determine whether Plaintiff has established the following: (1) he is likely to

5   succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary

6   relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.

7   *Id.* at 20 (citations omitted).

8         The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants satisfy

9   additional requirements when seeking preliminary injunctive relief against prison officials.  The

10  PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than
> necessary to correct the harm the court finds requires preliminary relief, and be
> the least intrusive means necessary to correct that harm. The court shall give
> substantial weight to any adverse impact on public safety or the operation of a
> criminal justice system caused by the preliminary relief and shall respect the
> principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

14  18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary

15  injunctive relief to inmates. *See Gilmore v.  People of the State of California*, 220 F.3d 987, 998

16  (9th Cir.  2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of

17  federal courts and to protect the bargaining power of prison administrators-no longer may courts

18  grant or approve relief that binds prison administrators to do more than the constitutional

19  minimum." *Id.* at 999.

20  **III. DISCUSSION**

21        First, Plaintiff must establish a likelihood of success on the merits of his Eighth

22  Amendment claim.

23        A prisoner can establish an Eighth Amendment violation arising from deficient medical

24  care if he can prove that prison officials were deliberately indifferent to a serious medical need.

25  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim of deliberate indifference requires an

26  examination of two elements: the seriousness of the prisoner's medical need and the nature of the

27  defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd*

28  *on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v.*

1    *Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th

2    Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could

3    result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*,

4    974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213. Examples

5    of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient

6    would find important and worthy of comment or treatment; the presence of a medical condition

7    that significantly affects an individual's daily activities; or the existence of chronic and

8    substantial pain." *McGuckin*, 974 F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131

9    (9th Cir. 2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was

10   wired shut for several months demonstrated a serious medical need).

11          If the medical need is "serious," the plaintiff must show that the defendant acted with

12   deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation

13   omitted). deliberate indifference is only present when a prison official "knows of and disregards

14   an excessive risk to inmate health or safety; the official must both be aware of the facts from

15   which the inference could be drawn that a substantial risk of serious harm exists, and he must

16   also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698

17   F.3d at 1213 (citation omitted).

18          Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally

19   interfere[s] with medical treatment, or it may be shown by the way in which prison officials

20   provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal

21   quotation marks and citation omitted).  "'[A] prisoner need not prove that he was completely

22   denied medical care' in order to prevail" on a claim of deliberate indifference. *Snow v. McDaniel*,

23   681 F.3d 978, 987 (9th Cir. 2012) (quoting *Lopez*, 203 F.3d at 1132), *overruled on other*

24   *grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Where delay in receiving medical

25   treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*,

26   974 F.2d at 1060.

27          Here, it is uncontested that Plaintiff suffers from various severe medical conditions,

28   including a cardiac condition and (at least at one point) elevated cholesterol. The question, then,

1   is whether Plaintiff has shown a likelihood of success with respect to his claim that Defendants

2   knew of and disregarded a serious risk to his health related to his receipt of medication.

3          It is undisputed that Plaintiff suffered a heart attack in May of 2015. Plaintiff attributes

4   this to the lack of cholesterol treatment by Dr. Donnelly, but also to NDOC's failure to refill his

5   prescriptions on time, leaving him without his prescribed medications for days, and even up to a

6   week, at a time. There is evidence in the record that following his heart attack there have been

7   occasions where Plaintiff has not received his medications on time.

8          For example, Plaintiff sent a request for refills of six medications on December 24, 2015.

9   (ECF No. 21-1.) In response, he was advised: "Dr. renewed all of your meds on 12-10-15. We

10  will look into why you have not gotten them. You should not be due until 1-6-16 according to

11  your last KOP[2] pick-up. So they should be available at that time." (ECF No. 21-1 at 19.) On

12  January 8, 2016, two days after he had been advised that his medications should be available to

13  pick up, he sent another request: "Please be advised. I'm out of the following meds again:

14  Chlorphenramine 4mg; Aspir-Low 81mg; Clopidogrel 75 mg; Lovastatin 20 mg. How long can I

15  safely go without them? It's been 4 days!" (ECF No. 21-1 at 18.) The response states: "SEE

16  Original order. 12/10/15-2nd Req." (*Id*.) Plaintiff sent another request on January 13, 2016: "I've

17  been out of my meds except for Atenolol & Carvedilol since 1-4-16. Is this life threatening or

18  dangerous to my health? Lovastatin. Aspir-Low- Clopidogrel?" (ECF No. 21-1 at 17.) According

19  to Ms. Fox, the data she accessed (which may have been different than that provided to the court)

20  indicates that the prescriptions were filled on January 10, 2016, even though Plaintiff had

21  inquired about the medications on December 24, 2015 and January 8, 2016. There is a notation

22  on Plaintiff's January 13, 2016 request, stating that the medications were sent from the pharmacy

23  on January 12, 2016. (*Id*) There is a notation in Plaintiff's KOP medication log showing Plaintiff

24  did not sign as having received the medication until January 15, 2016. (ECF No. 21-3 at 4.)

25         Therefore, while Plaintiff submitted a request for medications, and was advised he would

26  have them by January 6, 2016 (when according to the medical department he was set to run out),

27  he did not receive them until nine days later, on January 15, 2016.

28
_____
     [2] "KOP" refers to an inmate's "keep-on-person" medications.

1    Dr. Aranas acknowledged during the hearing that it is important that Plaintiff receive and

2    take his heart medications in light of the stents placed following his heart attack. Therefore, it is

3    reasonable to conclude that a failure to timely deliver his medications is likely to lead to further

4    injury.

5    Insofar as he must establish that Defendants knew of and disregarded a serious risk to his

6    health in failing to ensure his medications reach him on time, there is evidence in the record that

7    Plaintiff grieved the delay in receiving his medications on multiple occasions, advising them of

8    his prior heart attack, but still experienced issues getting his medication on time. (*See* ECF No.

9    3:16-cv-00371-MMD-WGC.) In addition, the delay in receipt of the medications from the

10   pharmacy in the December 2015 to January 2016 timeframe was acknowledged in a response to

11   an informal level grievance Plaintiff filed, with the statement: "we have little control over the

12   delivery time from southern Nevada." (ECF No. 21-10 at 2-6.) This statement was made even

13   though, as Judge Du pointed out, the medical director is responsible for pharmacy services and

14   policies. (*See* ECF No. 17 at 5, citing http://doc.nv.gov/About/Medical_Division/Home/.)

15   Plaintiff has also demonstrated he will likely suffer irreparable harm in the absence of

16   injunctive relief. He has presented evidence that there have been occasions where he has not

17   timely received his medication, and it is undisputed that it is important that he timely receive his

18   medications. Moreover, Plaintiff indicated that just knowing he has been without his medication

19   for days causes him stress, particularly if he is experiencing other physical symptoms.

20   At the hearing, Ms. Fox advised the court that a new software system had been

21   implemented in May of 2016 for the NDOC central pharmacy, whereby nurses at any NDOC

22   institution may enter refills directly into the computer which are then sent to the pharmacy and

23   enables the pharmacy to monitor when the refills are filled, shipped and received at the

24   institution. She indicated that this system has and will continue to greatly improve the

25   pharmacy's service. Ms. Fox gave assurances that the system implemented by the pharmacy in

26   May 2016 is a vast improvement on the prior system for processing refills and should operate to

27   assure Plaintiff receives his prescriptions in a timely fashion. Ms. Fox and Dr. Aranas also

28   advised the court that the prison is working on implementing a kiosk system that will make it

1  easier for inmates to request refills and for the pharmacy and medical staff to keep track of those

2  requests.

3       While the court is encouraged by the developments NDOC's medical division and

4  pharmacy department have implemented and are going to implement, Ms. Fox confirmed that

5  prior to implementation of the new system in May 2016, and even with its implementation, there

6  are no formal written procedures in place for the processing and administration of inmate refill

7  requests. Ms. Fox stated with some confidence that with the new system, there is a three to four

8  day process time on the pharmacy end for refills once a nurse has entered a refill into the system.

9  The only formal policy currently in place with respect to refills is Administrative Regulation

10  (AR) 635.12, which requires an inmate to submit a request for a refill no sooner than ten days

11  and no later than seven days prior to the time the inmate will run out of medication. (*See* ECF

12  No. 21-11 at 3.) No one from NDOC spoke to any policies (formal or otherwise) that are in place

13  concerning the handling and administration of prescriptions by the medical staff, either on the

14  front end (when the inmate requests a refill) or on the back end (after the institution receives the

15  shipment from the pharmacy and when it is given to the inmate). Further, Dr. Aranas indicated

16  that as the system currently operates (without the pending kiosk system for requesting refills),

17  inmate refill requests sometimes get lost or are not delivered.

18       This leaves the court with no assurance that even if Plaintiff timely placed his requests

19  for refills (which it appears he has consistently done in the past), that they would be promptly

20  communicated to the pharmacy and then timely delivered to him by his housing institution upon

21  receipt of the refills from the pharmacy.

22       Therefore, even with implementation of the new software system by the pharmacy,

23  Plaintiff has still demonstrated a likelihood of suffering irreparable harm in the absence of

24  injunctive relief.

25       Next, the court finds that the balance of equities tips in Plaintiff's favor because, as Judge

26  Du pointed out, and as was confirmed at the hearing, while he complies with the prison's

27  procedure concerning refill requests, Plaintiff does not always receive his medication in a timely

28  manner.

- 8 -

1     Finally, the court finds it is in the public interest that Defendants ensure that Plaintiff

2  receives his prescribed medications in a timely manner.

3     In sum, the court finds Plaintiff has satisfied the prerequisites for injunctive relief and

4  recommends that Plaintiff's request for a preliminary injunction be granted.

5     Federal Rule of Civil Procedure 65(c) allows the court to "issue a preliminary injunction

6  ... only if the movant gives security in an amount that the court considers proper to pay the costs

7  and damages sustained by any party found to have been wrongfully enjoined[.]" "Rule 65(c)

8  invests the district court 'with discretion as to the amount of security required, *if any*.'"

9  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona-Gomez v. Reno*,

10  167 F.3d 1228, 1237 (9th Cir. 1999)). The court has discretion to dispense with the security

11  requirement where it would effectively deny access to judicial review, *Save Our Sonoran, Inc. v.*

12  *Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (citation omitted), or where the plaintiff is

13  indigent, *V.L. v. Wagner*, 669 F.Supp.2d 1106, 1123 (N.D. Cal. 2009). As an indigent litigant,

14  Plaintiff should not be required to post security.

### IV. RECOMMENDATION

16     **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction

17  (ECF No. 1-3) be **GRANTED**, as follows:

18     Plaintiff is still required, consistent with AR 635.10, to request his medication refills by

19  submitting a kite to the infirmary/clinic up to ten days (and no later than seven days) before he is

20  set to run out of his medications. Defendants shall ensure that the refill is promptly entered into

21  the new system described by Ms. Fox, and the pharmacy shall promptly process the refill and

22  ship it to the institution where Plaintiff is housed. Defendants shall then ensure that when the

23  medication is received by the institution that it is promptly delivered to Plaintiff. The use of the

24  term "prompt" shall be construed in light of Ms. Fox's statement to the court that the time it

25  should take from when a refill is requested and entered into the system and received by the

26  inmate is three to four days.

27

28

1    Plaintiff should be required to keep documentation of his refill requests, and if

2    Defendants fail to timely provide Plaintiff within his medication refills, Plaintiff should be

3    permitted to move the court for monetary sanctions against Defendants.

4    This preliminary injunction should apply to the Defendants named in this action and their

5    officers, agents, servants, employees and attorneys. Fed. R. Civ. P. 65(d)(2)(A), (B).

6    The preliminary injunction should remain in place pending a full determination of

7    Plaintiff's claims upon the merits or upon further order of the court.

8    **IT IS FURTHER RECOMMENDED** that the TRO granted by District Judge Du be

9    extended while this Report and Recommendation is pending.

10    The parties should be aware of the following:

11    1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

12    this Report and Recommendation within fourteen days of receipt. These objections should be

13    titled "Objections to Magistrate Judge's Report and Recommendation" and should be

14    accompanied by points and authorities for consideration by the district judge.

15    2. That this Report and Recommendation is not an appealable order and that any notice of

16    appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

17    until entry of judgment by the district court.

18    DATED: August 26, 2016.

19    _____
     WILLIAM G. COBB

20    UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28

- 10 -